| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-2(c)<br><br>**GARY C. ZEITZ, L.L.C.**<br>GARY C. ZEITZ, ESQUIRE<br>ROBIN LONDON-ZEITZ, ESQUIRE<br>1101 Laurel Oak Road, Suite 170<br>Voorhees, New Jersey 08043<br>(856) 857-1222<br>*Attorneys for*<br>*Mary Rose 22, LLC* | |
| In Re:<br><br>EMILIO DEJESUS | Case No.: 25-10177/JNP<br><br>Chapter: Thirteen<br><br>Hearing Date: May 20, 2025 at 2:00PM |
| EMILIO DEJESUS<br>　　　　　Plaintiff<br>v.<br>MARY ROSE 22, LLC<br><br>　　　　　Defendant | Judge: Jerrold N. Poslusny, Jr.<br><br>Adv. Proc. No. 25-1020/JNP |

## BRIEF IN SUPPORT OF MOTION TO DISMISS ADVERSARY COMPLAINT

### STATEMENT OF FACTS

On January 7, 2025, Emilio DeJesus (the "Debtor") filed a voluntary petition for relief pursuant to Chapter 13 of the United States Bankruptcy Code. Prior to the filing of the Debtor's bankruptcy, on September 16, 2020, FIG Cust FIG NJ19 LLC & Sec Pty ("FIG") purchased from the Township of Pennsauken tax sale certificate number 20-00071 ("Tax Lien"), which is secured by the real property located at 1763 41st Street, Pennsauken, New Jersey, Block 902, Lot 15 (the "Property"). The Tax Lien was subsequently assigned to Mary Rose 22, LLC ("Mary Rose"). On December 8, 2023, FIG instituted proceedings for foreclosure of the Tax Lien by filing a complaint for Foreclosure of Tax Sale Certificate in the Superior Court of New Jersey bearing Docket No. F-13954-23 (the "Foreclosure Proceedings"). On December 29, 2023, FIG

1

recorded a notice of lis pendens against the Property. On July 26, 2024, FIG served the Debtor, via first class and certified mail, with a notice of owner's right to request a sheriff's sale. The Debtor did not request a sheriff's sale. On December 6, 2024, the court entered the Final Judgment of Foreclosure (the "Final Judgment"), thereby transferring title to the Property to Mary Rose. On December 27, 2024, the Court entered the Writ of Possession and Mary Rose instructed the Camden County Sheriff to serve the Writ of Possession and schedule an eviction.

On January 29, 2025 the Debtor filed a three (3) count adversary complaint (the "Adversary Proceeding") against Mary Rose to recover the Property pursuant to, *inter alia*, 11 U.S.C. §548(a)(1)(B) as a fraudulent conveyance, and the Takings Clause as an unlawful taking. Upon information and belief, the Adversary Proceeding has not been ratified by the Chapter 13 Trustee. Consequently, the Debtor does not have legal authority to prosecute the Adversary Proceeding. In addition, despite the Debtor's demand for relief in the Complaint, the Adversary Proceeding will not result in the Debtor re-attaining title to the Property.

Further, despite the entry of Final Judgment and transfer of title to Mary Rose, the Debtor attempts to mislead the Court by enumerating the Property on Schedule "A". In addition, the Debtor's Chapter 13 plan appears to be erroneously contingent upon the Debtor re-gaining title to the Property. Further, the Court issued an oral opinion on April 22, 2025 granting Mary Rose relief from the automatic stay to pursue its State Court eviction proceedings. The Debtor's Chapter 13 Plan is scheduled for confirmation on May 7, 2025.

Although the Debtor no longer maintains a legal or possessory interest in the Property, the Debtor instituted this bankruptcy proceeding for the sole purpose of delaying and hindering Mary Rose in taking possession of the Property. Certainly, the filing of the instant bankruptcy proceeding is a blatant effort to needlessly delay the Debtor's inevitable eviction from the

Property without any plan or basis for a stay of eviction, and it should not be tolerated by this Court.

## LEGAL ARGUMENT

I. **THE ADVERSARY COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Plaintiff's Adversary Complaint must be dismissed as a matter of law since he failed to state a claim upon which relief can be granted. The accepted and recently modified standard for a Rule 12(b)(6) motion is as follows:

> courts [must] accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.

Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the factual allegations in a plaintiff's complaint "must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting, Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007)). As such, the pleading standard for stating a claim "requires a complaint with enough factual matter (taken as true) to suggest the required element." Id. (quoting, Twombly, 127 S.Ct. at 1965)). In addition, F.R.C.P. 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief". Id.

The Supreme Court in Iqbal determined that conclusory or "bare-bones" allegations will not survive a motion to dismiss. Asbcroft v. Igbal, 129 S.Ct. 1937, 1949, 173 L.E2d 868, 556 U.S. 662, 77 USLW 4387 (2009). "(P]leading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." Fowler v. UPMC Shadyside, 578 F.3d

3

203, 210, 2009 WL 2501662 (3rd Cir., 2009). All civil complaints must now set out "sufficient factual matter" to show the claim is facially plausible in order to prevent dismissal. Iqbal at 1948. After Iqbal, district courts are faced with a two-part analysis when presented with a motion to dismiss. Fowler at 210. First, the Court must separate the factual and legal elements of a claim and accept all of the complaint's well-pleaded facts as true. Id. Second, the Court must determine whether the facts alleged are sufficient to show that the plaintiff has a "plausible claim" for relief. Id. at 211. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Twombly at 556, 127 S.Ct. 1955.

In the instant matter, the Debtor's chapter 13 plan is entirely based upon, and assumes, that the Debtor will regain ownership of the Property. However, as explained in detail hereinbelow, the Debtor will be unable to establish a takings claim since Mary Rose complied with the Tax Sale Law in the Foreclosure Proceedings. Further, even if the Debtor could substantiate a takings claim, the only remedy is a claim for money damages for just compensation. In addition, a fraudulent conveyance claim pursuant to 11 U.S.C. §548 only permits the Debtor to preserve and receive his exemption in the Property. Consequently, the Debtor will be unable to achieve the purported purpose of the Adversary Proceeding and his Chapter 13 plan. As a result, the instant Adversary Complaint must be dismissed.

II. **THE DEBTOR'S ADVERSARY COMPLAINT TO RECOVER OWNERSHIP OF THE PROPERTY BY AVOIDING THE TRANSFER OF THE PROPERTY AS A VIOLATION OF THE TAKINGS CLAUSE OR AS A FRAUDULENT CONVEYANCE PURSUANT TO 11 U.S.C. §548 IS FLAWED AS A MATTER OF LAW.**

    A. **The Amendments to the Tax Sale Law Vitiated Any Taking Claims by Property Owners.**

Even if the Debtor had a colorable claim to recover surplus equity (which is the only recovery for a takings violation), said claim was extinguished in Mary Rose's foreclosure lawsuit. The final judgment of foreclosure in Mary Rose's foreclosure lawsuit was entered on December 6, 2024 and is subject to the rights and remedies in the new Tax Sale Law, which was enacted on July 10, 2024. The new law applies to all foreclosure cases for which the right of redemption has not been foreclosed as of the effective date of the act. For pending cases, including this one, the law requires the foreclosing lienholder to send a notice to the property owner advising of the owner's right to request a sheriff's sale. If the owner does not request a sheriff's sale, a final judgment of foreclosure vesting title in the plaintiff is permitted. In addition, any right to claim surplus equity is foreclosed out, which vitiates any takings claim. See N.J.S.A. §54:5-87(a) and (b). The required notice was sent to the Debtor via regular and certified mail on July 26, 2024. The Debtor did not request a sheriff's sale. Consequently, the Debtor's takings claim was extinguished when the final judgment of foreclosure was entered on December 6, 2024.

This result is supported by the Court's opinion in Tyler v. Hennepin County, 598 U.S. 631, 143 S.Ct. 1369, 1379 (2023) in which the Court cited approvingly to its prior decision in Nelson v. City of New York, 352 U.S. 103, 77 S.Ct. 195, 1 L.Ed.2nd 171 (1956) (finding that because the New York City ordinance did not absolutely preclude an owner from obtaining the surplus proceeds of a judicial sale, but instead simply defined the process through which the

5

owner could claim the surplus, we found no Takings Clause Violation). Furthermore, Tyler v. Hennepin County does not stand for the proposition that a final judgment of foreclosure can be vacated under the Takings Clause, but rather, holds that if there were a taking, the foreclosed property owner may be entitled to just compensation for their equity. 598 U.S. 631. In addition, pursuant to the United States Supreme Court decision in Knick v. Twp. of Scott, 588 U.S. 180 (2019), the exclusive remedy for a takings violation is a money damages action for just compensation. See Knick at page 200-201. As explained by the Court in Knick, "[t]oday, because the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable. As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." Id. at 201. Likewise, in a nearly identical adversary proceeding, this Court issued a Memorandum Decision on March 17, 2025, finding that following the passage of the new Tax Sale Law on July 10, 2024, a Chapter 13 Debtor cannot recover title to a property as an unlawful taking. In re Jessica Franco, Jessica Franco v. Real Portfolio 13, LLC, Case No. 24-21084/ABA; Adv. No. 24-1626/ABA, pg. 8 ("The 2024 [Tax Sale Law] complies with both Tyler and Nelson as the property owner is give the opportunity to either redeem the property or request a judicial sale in order to recoup the excess equity. Here, the Debtor failed to either redeem the Property or request the judicial sale and thus is barred under the 2024 [Tax Sale Law] from any claim of ownership of the Property or excess equity in the Property").

The July 10, 2024 amendment to the New Jersey tax sale certificate law allowing property owners the right to elect to have their property sold at sheriff's sale to recover any surplus equity satisfies the Knick and Tyler requirements. Consequently, the Debtor in this case

6

cannot recover the Property under a takings theory and Count III must be dismissed with prejudice.

    **B.    The Debtor Does Not Have Standing to Exercise the Avoidance Powers of the Trustee Pursuant to 11 U.S.C. §548, and if Permitted to Proceed with the Fraudulent Conveyance Action, the Debtor Cannot Recover Title to the Property.**

The Debtor's standing to bring an avoidance action is a threshold issue, which must first be decided before the merits of the claim, if any, can be addressed in the pending Adversary Proceeding. The prefatory language of 11 U.S.C. §548 states that "the trustee may avoid any transfer[.]" 11 U.S.C. §548(a)(1). It does not say that the debtor may step into the trustee's shoes for all intents and purposes to pursue an avoidance action. The avoidance and recovery powers, as noted above, in Chapter 5 of the Bankruptcy Code are clearly worded in terms of an action by the Trustee. Consequently, a Chapter 13 debtor does not independently have standing in his or her own right to bring avoidance actions in a bankruptcy proceeding. See In re Knapper, 407 F.3d 573, 583 (3d Cir. 2005).

The bankruptcy code specifically states that the bankruptcy "trustee" is the entity empowered to avoid transfers under sections 544, 545, 547, 548 and 549. The bankruptcy code in sections 1107(a) and 1203 authorize a Chapter 11 and Chapter 12 debtor in possession to exercise the trustee's avoiding powers. Chapter 13 does not have any corresponding provision. 11 U.S.C. §1303 entitled "Rights and powers of Debtor" specifically enumerates the chapter 13 Debtor's rights and states that "[s]ubject to any limitations on a trustee under this chapter, the debtor shall have exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f) and 363(l) of this title." 11 U.S.C. §1303. Conspicuously missing from section 1303 is any mention of a Chapter 13 Debtor's right to pursue avoidance actions under 11 U.S.C. §548 or otherwise. The only code section authorizing a Chapter 13 Debtor to

7

utilize the Trustee's avoiding powers is contained in section 522(h) which is the "Exemptions" section of the bankruptcy code.

Further, the majority of courts that have addressed the issue have reached the conclusion that a Chapter 13 debtor does not have independent standing to avail itself of the trustee's strong-arm avoidance powers. See In re Skinner, 519 B.R. 613, 615 (Bankr. E.D.Pa. 2014) (the Plaintiff lacks standing because the Bankruptcy Code vests exclusive standing to prosecute fraudulent transfer claims in the trustee); In re Hannah, 316 B.R. 57, 62 (Bankr. D.N.J. 2004) (there is no statutory authority for a Chapter 13 debtor to exercise the avoidance powers pursuant to section 544(a) of the Bankruptcy Code); In re Steck, 298 B.R. 244 (Bankr. D.N.J. 2003) (Given the lack of any general authorization in § 1303, and the limited authorization set forth in § 522(h), it is reasonable to infer that Congress specifically intended to limit the ability of Chapter 13 debtors to employ the avoidance powers).

Even if the Debtor is authorized to proceed with his 11 U.S.C. §548 claim, the relief sought by the Debtor, i.e., voiding and vacating the Final Judgment, cannot come to fruition pursuant to 11 U.S.C. §548. Pursuant to 11 U.S.C. §522(h) the Debtor can only avoid the transfer of the Property to Mary Rose to the extent of his exemption in the Property. See, Wright v. Trystone Cap. Assets, LLC, 649 B.R. 625 (Bankr. D.N.J. 2023), aff'd D.N.J. Civil No. 23-2988(RBK); In re Jessica Franco, Jessica Franco v. Real Portfolio 13, LLC, Case No. 24-21084/ABA; Adv. No. 24-1626/ABA, pg. 12. 11 U.S.C. §522(h) vests a Chapter 13 debtor with the power to prosecute avoidance actions, but it contains a critical limitation. That statute reads:

> The debtor may avoid a transfer of property of the debtor . . . to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if . . ."

11 U.S.C. §522(h).

Thus, as determined by several New Jersey Bankruptcy Courts and in other jurisdictions, a Chapter 13 Debtor does not have the legal right under the bankruptcy code to avoid a transfer beyond the amount of his exemption. Wright v. Trystone Cap. Assets, LLC, 649 B.R. 625 (Bankr. D.N.J. 2023), aff'd D.N.J. Civil No. 23-2988(RBK); Morawski v Effect Lake LLC, Docket No. 20-12079/JKS, Adv. Pro. No. 20-1125/JKS (April 11, 2022)(Debtor only has standing to avoid transfers to the extent of her exemption and for the benefit of creditors); In re Nealy, 623 BR 278 (Bankr. D.N.J. 2021) (the plain language of 11 U.S.C. §522(h) and §550(a) do not permit a debtor to wholesale undo a transfer in its entirety. It only permits the debtor to avoid a transfer to the extent of the exemption.); In Re Turner, 490 B.R. 1, 2 (Bankr. D.D.C. 2013) (section 522(h) only allows avoidance to the extent of the debtor's exemption); In re Young, 390 B.R. 480, 489 (Bankr. D. Me 2008) (debtors could only avoid lien to the extent of their allowed exemptions under 522(h)); In re Funches, 381 B.R. 471, 496 (Bankr. E.D. Pa 2008) ("I find the Code to be clear and unambiguous on the subject of the debtor's authority to exercise the trustee's avoidance powers and conclude that implying additional rights to chapter 13 debtors does violence to the balance of rights among debtor, trustee and creditors that has been carefully constructed in the statute"); In re Ryker, 315 B.R. 664, 674 (Bankr. D.N.J. 2004) (finding unpersuasive the reasoning given to allow chapter 13 debtors to avoid transfers other than through section 522(h)).

Further, 11 U.S.C. §550(a) provides the remedy after a transfer is avoided. The section is applicable to a Chapter 13 Debtor pursuant to 11 U.S.C. §522(i)(1). 11 U.S.C. §550(a) provides in relevant part "*to the extent* that a transfer is avoided under section 544, 545, 547, 548, 549 553(b) or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred or, if the court so orders, the value of such property ..." 11 U.S.C. §550(a) (emphasis added). Thus, the trustee or a debtor can only recover "to the extent" that a transfer is avoided.

9

Wright v. Trystone Cap. Assets, LLC, 649 B.R. 625 (Bankr. D.N.J. 2023), *aff'd* D.N.J. Civil No. 23-2988(RBK).

In the instant case, it appears that the Debtor has neither sought, nor obtained, ratification of the Adversary Complaint from the Chapter 13 trustee. Thus, the Debtor cannot proceed with the Adversary Proceeding, and the Complaint should be dismissed. However, in the event that the Debtor is permitted to proceed, the Complaint should still be dismissed since the claim for relief is unattainable and does not comport with the Bankruptcy Code. As stated hereinabove, the Debtor only has a cause of action to avoid the transfer to the extent of his 11 U.S.C. §522(d)(1) exemption pursuant to 11 U.S.C. §522(h). Thus, the Debtor's recovery, if any, pursuant to his 11 U.S.C. §548 Count will not extend to reinstating title to the Property. Likewise, the Debtor's Chapter 13 plan is not feasible and will fail since its success is based upon the sale of the Property. Thus, the Debtor will be unable to confirm his Chapter 13 plan and prosecute the Adversary Proceeding. For all the foregoing reasons, Count I of the Adversary Complaint must be dismissed with prejudice.

### III.  THE ROOKER-FELDMAN DOCTRINE PROHIBITS THE DEBTOR FROM OBTAINING THE RELIEF SOUGHT IN THE ADVERSARY COMPLAINT.

The New Jersey Tax sale law now addresses takings claims in its statutory framework. In addition, the remedy for a claim pursuant to 11 U.S.C. §548, if the Debtor establishes standing, is monetary damages. Consequently, the Debtor is barred from seeking to vacate the Final Judgment by collaterally attacking the Final Judgment in this Court pursuant to the Rooker-Feldman doctrine. See, In re Jessica Franco, Jessica Franco v. Real Portfolio 13, LLC, Case No. 24-21084/ABA; Adv. No. 24-1626/ABA, pg. 13. On this basis, the Debtor's Adversary Complaint must be dismissed.

The Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by "state-court losers" challenging "state-court judgments rendered before the district court proceedings commenced." Exxon Mobile Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005); Great Western Mining & Mineral Co. V. Fox Rothschild LLP, 615 F.3d 159 (3d Cir. 2010). The Rooker-Feldman doctrine includes three requirements: (1) The party against whom the doctrine is invoked must have been a party to the prior state court judgment; (2) the claim raised in the federal suit must have been raised or inextricably intertwined with the state court judgment; and (3) the federal claim must not be parallel to the state court claim. Lance v. Davidson, 379 F.Supp.2d 1117, 1127 (2005). Besides the Rooker-Feldman doctrine, the Supreme Court has repeatedly recognized that states have important interests in administering certain aspects of their judicial systems, such as state lien provisions and enforcement of judgments in state court. Pennzoil Co. V. Texaco Inc., 481 U.S. 1, 13 (1987). Absent a conflict between the state and bankruptcy laws, the law of the state where the property is situated governs questions of property rights. Matter of Roach, 824 F. 2d 1370, 1373-74 (3d Cir. 1987). Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. Butner v. United States, 440 U.S. 48, 54 (1979).

In the instant matter, the Final Judgment was entered by the State Court on December 6, 2024. The Debtor was a party to the Foreclosure Proceedings. The Debtor's claims in the Adversary Proceeding specifically collaterally attack the Final Judgment as a taking violation and pursuant to 11 U.S.C. §548, despite the clear language of the revised Tax Sale Law, and the jurisdiction of the State Court to enter such order. Again, the required notice to request a sheriff's sale was sent to the Debtor via regular and certified mail on July 26, 2024. The Debtor did not request a sheriff's sale. Consequently, the Debtor's takings claim was extinguished when the final judgment of foreclosure was entered on December 6, 2024 and cannot be recreated in

11

the Bankruptcy Court. Thus, the Rooker-Feldman Doctrine prevents the Debtor from contesting the State Court Final Judgment (1) as a taking since any right to claim surplus equity is foreclosed out, which vitiates any takings claim pursuant N.J.S.A. §54:5-87(a) and (b) and (2) pursuant to 11 U.S.C. §548 since the Debtor's only remedy under 11 U.S.C. §550 is monetary damages.

## CONCLUSION

For the all of the foregoing reasons, Mary Rose respectfully requests that Debtor's Adversary Complaint be dismissed with prejudice.

Dated: April 28, 2025

GARY C. ZEITZ LLC
By: /s/ ROBIN LONDON-ZEITZ
Robin London-Zeitz, Esquire
*Counsel for Mary Rose 22, LLC*